Filed 7/18/22  Oak Hill Park v. City of Antioch CA1/4
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| OAK HILL PARK COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF ANTIOCH et al.,<br><br>    Defendants and Respondents;<br><br>LET ANTIOCH VOTERS DECIDE,<br><br>    Real Party in Interest and<br>    Respondent. | A162604<br><br>(Contra Costa County<br>Super. Ct. No. MSN20-1185) |

Plaintiff Oak Hill Park Company (Oak Hill) appeals an order awarding real party in interest Let Antioch Voters Decide (LAVD) $66,725 in attorney fees pursuant to Code of Civil Procedure[1] section 1021.5 based on LAVD's opposition to Oak Park's pre-election challenge to a local ballot initiative. Oak Hill contends that the court abused its discretion in awarding attorney fees to LAVD because, among other reasons, LAVD did not enforce an important right affecting the public interest. Oak Hill's request for a restraining order was denied based solely on a declaration submitted by the Contra Costa County Registrar of Voters (county registrar) for the City of

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

Antioch (the city) establishing that removal of the initiative from the ballot at that late date would interfere with the election process.

We agree that LAVD's contribution to the litigation was duplicative of the city's opposition on the controlling issue, so that LAVD's efforts to defend the public's right to vote on the initiative was neither necessary nor productive. We shall therefore reverse the attorney fee order.

## Background

The city's general plan outlines a vision for development of up to 4,000 residential dwelling units within the 2,712-acre southern portion of the city known as the Sand Creek Focus Area (focus area). Oak Hill owns vacant land in the focus area which it intends to develop for residential housing.

In advance of the November 2018 election, LAVD began collecting signatures to place an initiative on the ballot which, if approved by the voters, would prohibit development of housing within a portion of the focus area that includes Oak Hill's property. In June 2020, following an unsuccessful attempt by the city to adopt the initiative without an election, the city adopted a resolution placing the initiative on the November 2020 ballot.

In August 2020, Oak Hill filed a petition for a writ of mandate and an ex-parte application for a temporary restraining order to prevent the placement of the initiative on the November 2020 ballot. Oak Hill argued that the initiative conflicted with the Housing Crisis Act of 2019, Government Code section 66300 et seq., which prohibits cities and counties from modifying their land use regulations to lessen the intensity of, or otherwise prohibit, new housing. (See Gov. Code, § 66300, subd. (b)(1)(B) [prohibiting any "moratorium or similar restriction or limitation on housing development"].)

2

At an informal hearing at which counsel for both the city and LAVD appeared and LAVD presented written opposition, the trial court denied the application for a restraining order. The court did so based solely on a declaration submitted by the county's registrar stating that production of ballots had already begun and that a restraining order would interfere with the election process. The court explained that as a practical matter and due to Oak Hill's delay, it was too late to remove the initiative from the ballot. Oak Hill subsequently requested and obtained a dismissal of its petition without prejudice.

In January 2021, after the voters approved the initiative, Oak Hill filed a second action seeking to prohibit implementation and enforcement of the initiative. While that action was pending, LAVD moved for an award of attorney fees in this case, the prior action, on the ground that protecting the public's right to vote on the initiative constituted enforcement of "an important right affecting the public interest." The court granted the motion and ordered Oak Hill to pay LAVD $66,725 in attorney fees. Oak Hill timely filed a notice of appeal.[2]

---

[2] Oak Hill requests that we take judicial notice of the judgment and writ of mandate in *Oak Hill Park Co. v. City of Antioch*, Contra Costa County Superior Court No. CVMSN21-0048, issued during the pendency of this appeal, by which the trial court invalidated and prohibited enforcement of the principal provisions of the initiative. Because the subsequent result in that proceeding is not relevant in this appeal, the request is denied. In light of our determination that public enforcement was not necessary to defeat Oak Hill's request for a restraining order, we do not consider Oak Hill's alternative argument against the award of attorney fees that LAVD's efforts to ensure that the initiative remained on the ballot provided no public benefit since the measure was invalid.

## Discussion

Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

"Whether the applicant for attorney fees has proved section 1021.5's elements is a matter primarily vested in the trial court. [Citation.] '. . . We will reverse the trial court's decision only if there has been a prejudicial abuse of discretion, i.e., when there has been a manifest miscarriage of justice or " 'where no reasonable basis for the action is shown.' " ' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 620; see also *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 807 [attorney fee award under section 1021.5 " 'will not be disturbed " 'unless the appellate court is convinced that it is clearly wrong.' " ' "].)

On appeal, Oak Hill contends the trial court erred in finding that LAVD enforced an important right affecting the public interest. It argues that "[t]here was absolutely *no* public benefit in having voters weigh in on a ballot measure that clearly violated state law from the start" and that LAVD offered no meaningful or necessary contribution to the denial of the application to remove the initiative from the ballot. We need not address Oak Hill's first argument, as LAVD's participation in the pre-election writ proceeding was of no consequence to the outcome.

In *Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 642, the court set forth the standard for determining the necessity of private enforcement for purposes of section 1021.5 in the "relatively rare minority of cases" where the private party co-litigates with a public entity. The court found that "an attorney fee award is dependent upon an ultimate finding of the trial court that the colitigating private party rendered necessary and significant services of value to the public or to a large class of persons benefited by the result of the litigation. [¶] Important factors the trial court should address in determining if the services of the private party were necessary, so as to support that ultimate finding, are these: (1) Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution to its judgment, which were nonduplicative of those advanced by the governmental entity? (2) Did the private party produce substantial evidence significantly contributing to the court's judgment which was not produced by the governmental entity, and which was neither duplicative of nor merely cumulative to the evidence produced by the governmental entity?" (*Id*. at pp. 642–643.) The court warned that trial courts "must carefully walk the line between unreasonably transmuting section 1021.5 into an unwarranted cornucopia of attorney fees for those who . . . [perform] duplicative, unnecessary, and valueless services, and providing appropriate compensation under that statute in cases where the colitigating private party does render necessary, significant services of value and benefit to the public." (*Id*. at pp. 643–644.)

As set forth above, the petition was dismissed shortly after the trial court denied Oak Hill's ex parte application for a restraining order. Both LAVD and the city attended the ex parte hearing. LAVD submitted a written

5

brief opposing issuance of a restraining order on several grounds including that Oak Hill failed to give the required notice for the ex parte hearing and that the requested restraining order was contrary to the "strong presumption" against pre-election challenges based on claims that an initiative is unlawful or otherwise substantively invalid. LAVD also argued that the request was untimely. LAVD's opposition explained, "As the County Registrar of Voters ("ROV") earlier this week informed the First District Court of Appeal with respect to a similar request by Oak Hill's co-petitioners in [a related case] . . . any such relief would 'substantially interfere with the conduct of the election.' [¶] For the court to issue a [temporary restraining order] or otherwise grant any of the relief requested in Oak Hill's ex parte application at this point would likewise interfere with the November 3, 2020 election, given that the ROV already sent the official ballots to the printer *last* Monday and is scheduled to send the official voter information guides to the printer on Monday, August 31, 2020, which is the date set for the ex parte hearing." Although the county registrar, in his declaration, expressly declined to take a position on the merits of Oak Hill's petition, he detailed the steps taken to prepare the ballot and stated that "[b]ecause ballot production has commenced, any change to the ballot at this point will substantially interfere with the printing and distribution of official election materials." The court limited argument to the timing for the final submission of official general election ballots to the printer and, as noted above, denied the application solely on that ground. LAVD's participation in the proceeding was both unnecessary and duplicative.

The trial court's contrary conclusion that LAVD's participation was necessary is not supportable. The trial court explained, "The county registrar appeared at the hearing at the temporary restraining order by providing a

6

critical declaration, but did not file any other appearance. The city never made a formal appearance. Still, given the city's position in the prior litigation (i.e., that the matter did not need to be placed on the ballot), LAVD understandably thought its participation was necessary. Moreover, Oak Hill Park named LAVD as the real party in interest, making LAVD a party whether it wanted to be or not."

However, neither Oak Hill's decision to name LAVD as a real party in interest nor LAVD's very understandable belief that its participation was necessary justifies the fee award. While "a real party in interest who successfully defeats a petition for writ of mandate may recover her attorney fees under section 1021.5 if she meets all three elements of the statute" (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 828), LAVD failed to satisfy one of the statute's essential elements. The test is: "Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution to its judgment, which were nonduplicative of those advanced by the governmental entity?" (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center, supra,* 229 Cal.App.3d at pp. 642-643; *Wal-Mart Real Estate Business Trust v. City Council of San Marcos, supra,* 132 Cal.App.4th at p. 623.) While LAVD might well have been entitled to fees under this statue had the court refused to remove the initiative from the ballot on any of the other grounds urged in its papers, which were not advanced by the city, the fact is the court denied relief solely based on the declaration of the registrar presented by the city.

LAVD undoubtedly had reason to thoughtfully brief all of the reasons it contended the initiative should not be removed from the ballot. But, as it turned out, that briefing proved unnecessary to defeat Oak Hill's request to remove the initiative from the ballot. LAVD's written opposition

acknowledged that the city was actively participating in the litigation and disputing the timeliness of Oak Hill's application. LAVD's duplicative opposition on this ground added nothing and made no contribution to the enforcement of an important right affecting the public interest.[3]

Accordingly, we must reverse the order granting LAVD's motion for attorney fees.

## Disposition

The attorney fee order is reversed. Oak Hill is to recover its costs on appeal.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

---

[3] At oral argument, LAVD stressed that after the court denied Oak Hill's application for a temporary restraining order, the matter was nonetheless calendared for a hearing on the application for a preliminary injunction. This was done at Oak Hill's insistence apparently based on its preliminary view that the court might order the registrar not to tabulate the election results. Oak Hill apparently recognized thereafter that such relief could not be granted and then dismissed its complaint. While the failure to immediately dismiss the action undoubtedly caused additional unnecessary work for LAVD's attorneys, the action was dismissed without any further adjudication, for the sole reason that the election process was already underway. Both in the trial court and in this court, LAVD's claim has always been simply that "in defending the Initiative and ensuring its submittal to the voters, LAVD undeniably provided a significant public benefit in this action." Under the circumstances, LAVD's efforts were not in any way responsible for ensuring that the initiative was submitted to the voters.